## H. LESTER SMITH, RESPONDENT, v. F. STANLEY KREPS, APPELLANT.

Submitted October 28, 1927—Decided February 6, 1928.

For the appellant, *F. Stanley Kreps.*

For the respondent, *William Charlton.*

The opinion of the court was delivered by

WHITE, J.  This is an appeal from a judgment in the Circuit Court entered upon a verdict directed for the plaintiff, in an action by a real estate broker to collect from an owner-vendor the amount ($2,000 less a payment of $500 on account thereof) of an agreed upon commission for the sale of certain real estate in Ocean City.

From the evidence presented to it we think the jury would have been justified in finding—that the contract in writing for the payment of the commission to the broker for the sale of the property in question, had reference to an alleged sale claimed to have been embodied in a contract in writing for the sale of said property purporting to be signed by one "Peter Carter" as purchaser, which contract was delivered to the owner-vendor by the broker immediately before the commission agreement was signed, at which time there was also delivered to said owner by said broker four checks drawn to the owner's order, each for $500, thus making up the $2,000 deposit money specified in the contract of sale, which checks were signed, respectively (each signed one of them), by four well known real estate operators, who, however, were not named in and did not sign the contract of sale; that before and at the time of signing of said contract of sale by the owner-vendor (he had never heard of Peter Carter and did not meet him at any time in the entire transaction), the broker assured said owner for the purpose of inducing him to enter into the sale contract; "that he, the broker, knew said Peter Carter and knew that he was the real purchaser and was responsible and able and willing to consummate the purchase in accordance with the terms of the written contract therefor; that, in fact, the broker not only did not know anything about Peter Carter's responsibility or ability to perform the contract of purchase, but did not know anything about him whatsoever, never having (according to his own testimony) either met him, seen him, or heard of him; that Peter Carter (if any such person exists at all) was a mere 'dummy' or what is sometimes called a 'signing straw-man,' who was employed to sign the contract and thus pretend to purchase the property, when, in fact neither he nor his employers intended his signature to be anything more than an unsubstantial pretense in formal compliance with the requirements of the statute of frauds, in order that his employers might, as his assignees, require the performance of the contract by the vendor if the purchase resulted or seemed likely to result in a profit, or if it did not, might abandon it and leave the vendor with nothing but a mere empty form," instead of the

substantial sale which he had been fraudulently induced to think that he had secured; that the broker knew that Carter was a mere irresponsible "straw-man" or "dummy," and also knew that the real substantlal parties in interest were the four operators whose respective checks paid the deposit money, but.who, not having signed the written contract of sale, were not responsible as purchasers for the remainder of the purchase price, and knowing these facts not only concealed this knowledge from his principal, the owner (which in itself would have been fatal to his right to recover his commission—*Carpenter* v. *Overland Tire Co.*, 102 *N. J. L.* 196), but induced him to enter into the contract with Carter by falsely representing the facts to be exactly the contrary; and, finally, that the owner-vendor believed the false representations of the broker to be true, and was induced by them to enter into a contract of sale with Carter and to sign the commission agreement with the broker.

On the other hand, the jury might, with equal propriety, have found from the evidence that the broker made no misrepresentations whatsoever as to Carter, but, on the contrary, fully and truthfully acquainted his principal with everything he knew, and that, in fact, the owner-vendor knew perfectly well that he was not getting the signatures of the read purchasers procured by the broker, but only their deposit money and an irresponsible signer to the sale contract, and that with such knowledge he chose to take the chance of the sales settlement ultimately being consummated.

Under the former state of facts the broker would clearly not be entitled to recover on the commission contract, whereas, under the latter, he would be entitled to recover.

We think, therefore, that a jury question was involved, and that the learned trial judge erred in directing a verdict.

The judgment is reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.